976 F.2d 734
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Baldwin Fitzroy CLEVY, Defendant-Appellant.
 No. 92-4048.
 United States Court of Appeals, Sixth Circuit.
 Sept. 9, 1992.
 
 Before BOYCE F. MARTIN, Jr. and SUHRHEINRICH, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 * PER CURIAM.
 
 
 1
 Police at the Denver Stapleton Airport routinely perform surveillance of flights arriving from Los Angeles. On May 3, 1991, they observed Baldwin Clevy, who had deplaned from a Los Angeles flight, acting suspiciously. They investigated his travel arrangements and discovered that he was awaiting a connecting flight to Cleveland. The Denver airport police then called Deputy Sheriff Donald Michalosky of the Cleveland Hopkins International Airport Drug Enforcement Administration unit and relayed this information.
 
 
 2
 Michalosky, along with Special Agent Krebs and Officer Horner, established surveillance over the gate where Clevy's plane was expected to arrive. Clevy claimed his baggage, which consisted of a briefcase, a gray garment bag, and a blue garment bag, and headed for the nearest exit.
 
 
 3
 Michalosky, Krebs, and Horner approached Clevy on the sidewalk outside the terminal as he waited at a bus/taxi stand. The police officers identified themselves to Clevy and engaged him in conversation. In response to an inquiry from Clevy, the officers indicated that they were with the drug enforcement unit. The officers asked if they could search Clevy's bags. Clevy responded by asking where the search would take place, and Michalosky indicated it would be up to Clevy. Clevy then stated his preference for a more private setting and followed the officer to the airport police office.
 
 
 4
 On the way to the police office, Clevy answered "I suppose" when asked if the bags were his. After reaching the police office, Clevy was asked about the bags a second time, he then disowned the blue garment bag. Officer Michalosky asked a third time and Clevy again renounced the blue garment bag. Michalosky followed up by asking why the bag bore Clevy's name tag. Clevy insisted, "I don't know anything about that, that's not my bag." Michalosky asked Clevy if he would consent to a search of his bags. Clevy gave his consent but added another disavowal of the blue garment bag. He then gratuitously offered that he could not understand why he was in so much trouble for stealing a piece of luggage. When the officers opened the blue garment bag, which required cutting through a padlock, they discovered five kilograms of cocaine. Clevy was read his Miranda rights and placed under arrest.
 
 II
 
 5
 Clevy describes his encounter with the police as a custodial interrogation, if not from the moment they approached him, then from the time they entered the airport police office. Since the officers lacked probable cause, Clevy continues, the search and interrogation were conducted in violation of his Fourth Amendment rights and the fruit of that violation, the cocaine, must be suppressed.
 
 
 6
 The district court characterized Clevy's encounter with the police as a consensual interview. To determine whether an encounter is consensual, we ask whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." Id.
 
 
 7
 Clevy contends that because the search was conducted inside the police office, he did not feel free to object to the search. He adds that, as a non-native American (he is from the Virgin Islands), he was less familiar with and therefore more intimidated by police procedure. This is irrelevant, the inquiry set forth in Mendenhall is an objective one, looking to whether a reasonable person would have felt free to leave. 446 U.S. at 554. The police asked Clevy twice whether he would consent to a search. In addition, when Clevy asked about the location of the search, he was told that he could decide. A reasonable person certainly would have realized that he, not the police, would determine whether and where the search would take place. Furthermore, knowing that he controlled the site of the search, a reasonable person would have felt free to request an alternative location to the police office. It is difficult to imagine the police more fully submitting a search to the discretion of the person to be searched. Consequently, we are convinced that Clevy validly consented to the search. See United States v. Taylor, 956 F.2d 572 (6th Cir.1992) (en banc) petition for cert. filed, 60 U.S.L.W. 3800 (U.S. May 7, 1992) (No. 91-1797).
 
 
 8
 Clevy also argues that the physical proximity of the officers, who stood within arm's length while questioning him on the sidewalk, supports his belief that he was not free to leave. However, the officers clearly submitted the search to Clevy's discretion. Doing so from within arm's length does not render reasonable an otherwise unreasonable belief that one is not free to leave.
 
 
 9
 Finally, Clevy points out Krebs's statement that he would not have allowed Clevy to leave if Clevy had tried. Since we apply an objective standard that looks to the reasonable interviewer, what a particular officer subjectively thought is irrelevant. It becomes relevant only if conveyed, which did not occur in this case.
 
 III
 
 10
 Clevy also lacks standing to challenge the search. Fourth Amendment standing consists of two elements: (1) a defendant must exhibit an actual expectation of privacy, and (2) the exhibited expectation must be reasonable. See, e.g., United States v. Maryland, 442 U.S. 735, 741-42 (1978). A defendant who abandons property ipso facto fails to exhibit an actual expectation of privacy and, therefore, has no standing to contest a search of that property. California v. Greenwood, 486 U.S. 35 (1988).
 
 
 11
 A defendant who disclaims ownership of a piece of luggage abandons it. See United States v. Tolbert, 692 F.2d 1041, 1045 (6th Cir.1982) (quoting United States v. Miller, 589 F.2d 1117, 1131 (1st Cir.1978)), cert. denied, 464 U.S. 933 (1983); United States v. Knox, 839 F.2d 285, 293 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989). Clevy denied ownership of the blue garment bag three times. When subsequently asked why the bag had bore a name tag, Clevy had yet another opportunity to assert a privacy interest; instead, he merely repeated his disclaimer. Compare Knox, 839 F.2d at 289, 293. Having thrice denied ownership of the blue garment bag, Clevy abandoned any privacy expectation in it and thus lacks standing to challenge the search under Tolbert and Knox.
 
 IV
 
 12
 For the foregoing reasons, we affirm the district court.